UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RON FRANKLIN,<br>    Plaintiff,<br>v.<br>DENNIS MALLY,<br>    Defendant. | Case No. 17-cv-00789-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 51 |

Plaintiff Ron Franklin ("Franklin") brings this suit against Defendant Officer Dennis Mally ("Mally"), alleging claims under 42 U.S.C. § 1983 ("Section 1983") for unlawful seizure, excessive force, and malicious prosecution, as well as various state law claims. Pending before the Court is Defendant's motion for summary judgment as to all claims, briefing for which is complete. *See* Dkt. Nos. 51 ("Mot."), 54 ("Opp."), 56 ("Reply"). Having carefully considered the parties' briefing, the relevant law, and the record presented in the briefing, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion for summary judgment.

I.     BACKGROUND[1]

On October 8, 2015, Plaintiff was running errands with his uncle Kevin Govan ("Govan"), in a blue Nissan. *See* Dkt. 54-1 Ex. A ("Franklin Dep.") 11:2–12:1, 27:19–20, 45:3–7, 47:20–25. Plaintiff was approximately 17 or 18 years old at the time, and Govan was 30 or 31. *Id.* at 27:19–22, 56:19–57:1. At first, Govan's girlfriend and young daughter were both with Plaintiff and Govan. *Id.* at 48:18–49:4, 51:16–18. After dropping Govan's girlfriend off, Plaintiff was in the front passenger seat and Govan's daughter was in the back seat. *Id.* at 58:1–10.

---

[1] Except as where noted otherwise, relevant facts are undisputed.

As they drove through San Leandro, Govan said something along the lines of, "Oh they're behind us, what are they stopping me for?" *Id.* at 59:7–21. Govan stopped the vehicle and Plaintiff observed a police car behind them. *Id.* at 59:7–60:5. An officer approached the driver's side door and told Govan that he was going to explain why he pulled him over. *Id.* at 61:7–17, 62:5–17, 63:16–64:8. Govan then stepped on the accelerator and sped away. *Id.* at 62:21–63:3, 64:13–19. Govan drove away at a speed above the speed limit and drove through stop signs. *Id.* at 65:24–66:4.

That day, Defendant was on patrol in a marked San Leandro Police Department ("SLPD") patrol car. *See* Dkt. No. 54-1 Ex. B ("Mally Dep.") at 28:25–29:6, 33:22–24. At approximately 12:42 p.m., Defendant heard radio traffic broadcast about a vehicle pursuit of individuals and a car suspected to be involved in a home invasion earlier that day. *Id.* at 29:11–15, 33:18–35:8. SLPD had received reports earlier that day about a home invasion, where the suspects were four black men in their early twenties driving a blue car, and where one of the suspects was believed to be armed with a firearm. *Id.* at 34:16–35:8. Defendant decided to join the pursuit, believing that the two men he was pursuing were suspects from the earlier home invasion, because the two individuals were young black men in a blue car. *Id.* at 33:18–34:9, 34:22–35:8.

Defendant pursued the vehicle until Govan failed to negotiate a turn and crashed into a retaining wall. *Id.* at 35:24–37:17. Govan's car stopped as a result of the crash, and Defendant pulled up behind the car and stopped approximately fifteen feet behind the blue Nissan. *Id.* at 37:9–17, 38:13–16. Due to the crash, the airbag in front of Plaintiff deployed and was in Plaintiff's face. Franklin Dep. 68:9–69:2. The car was smoking, and Plaintiff claims that he opened his passenger side door for air and to get relief from the fumes and smoke. *Id.* at 69:3–70:9. Govan told Plaintiff to stay with his daughter, Plaintiff agreed, and Govan quickly exited the car and ran away. *Id.* 71:1–19. According to Plaintiff, he was sitting in the car waiting for instructions from an officer when a K9 suddenly entered the car, came across his body, and bit his left arm. *Id.* at 70:2–17, 73:2–74:12, 75:3–9.

Plaintiff contends that he did not resist the K9, which pulled Plaintiff out of the vehicle and toward Defendant. *Id.* at 79:15–25. As the K9 was biting Plaintiff, Defendant shouted commands

2

at Plaintiff to get down on the ground, lay flat on his stomach, and put his hands behind his back. *Id.*; Mally Dep. 47:2–16. Plaintiff got on the ground, but had difficulty getting on his stomach because the K9 was biting his arm. Franklin Dep. 84:10–85:20. Plaintiff eventually was able to get on his stomach, after which Mally released the K9. *Id.* at 83:12–19, 85:19–86:21; Mally Dep. 47:2–16, 52:7–18, 66:2–17.

Plaintiff was handcuffed and then later treated and transported to the hospital for medical clearance. Franklin Dep. 87:1–3, 87:16–22, 88:9–12, 89:11–21. Plaintiff was then transported to jail, where he was booked and cited for violation of California Penal Code Section 148 ("Section 148") (resisting, delaying or obstructing a peace officer). Mally Dep. 58:15–59:16, 67:25–68:9. Mally testified that the only reason he cited Plaintiff with a violation of Section 148 is because Plaintiff fled from the car after he was told to stop. *Id.* at 67:25–68:9. The District Attorney filed charges against Plaintiff for a violation of Section 148(a)(1), but later dismissed the charges. *See* Opp. at 6.

## II. LEGAL STANDARD

Summary judgment is proper when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is evidence in the record sufficient for a reasonable trier of fact to decide in favor of the nonmoving party. *Id.* The Court views the inferences reasonably drawn from the materials in the record in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986), and "may not weigh the evidence or make credibility determinations," *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), *overruled on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008).

The moving party bears both the ultimate burden of persuasion and the initial burden of producing those portions of the pleadings, discovery, and affidavits that show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will not bear the burden of proof on an issue at trial, it "must either produce

3

evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Where the moving party will bear the burden of proof on an issue at trial, it must also show that no reasonable trier of fact could not find in its favor. *Celotex Corp.*, 477 U.S. at 325. In either case, the movant "may not require the nonmoving party to produce evidence supporting its claim or defense simply by saying that the nonmoving party has no such evidence." *Nissan Fire & Marine Ins. Co.*, 210 F.3d at 1105. "If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 1102–03.

"If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Id.* at 1103. In doing so, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586. A nonmoving party must also "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). If a nonmoving party fails to produce evidence that supports its claim or defense, courts enter summary judgment in favor of the movant. *Celotex Corp.*, 477 U.S. at 323.

### III. DISCUSSION

Plaintiff's suit alleges seven causes of action: (1) violation of Section 1983 for an unlawful seizure due to a false arrest; (2) violation of Section 1983 for excessive force; (3) violation of Section 1983 for malicious prosecution; (4) violation of the California Bane Act; (5) negligence; (6) battery; and (7) intentional infliction of emotional distress. *See* Dkt. No. 28 ¶¶ 22–54. Defendant moves for summary judgment on all causes of action.

#### A. Unlawful Seizure

To succeed on a Section 1983 claim based on false arrest, a plaintiff must show that the defendant lacked probable cause for the arrest. *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998). "Probable cause to arrest exists when officers have knowledge or reasonably

4

trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007). "Probable cause requires only a fair probability or substantial chance of criminal activity, and [courts] determine the existence of probable cause by looking at 'the totality of the circumstances known to the officers at the time.'" *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (quoting *United States v. Bishop*, 264 F.3d 919, 924 (9th Cir. 2001)). "Probable cause is an objective standard and the officer's subjective intention in exercising his discretion to arrest is immaterial in judging whether his actions were reasonable for Fourth Amendment purposes." *John v. City of El Monte*, 515 F.3d 936, 940 (9th Cir. 2008). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).

Plaintiff argues that his arrest was not supported by probable cause primarily because, viewing the facts in the light most favorable to him, Defendant lacked a sufficient basis to arrest Plaintiff for a violation of Section 148, the only violation for which Plaintiff was cited. Opp. at 10–11. As Plaintiff notes, his characterization of the incident is that he made no attempt to flee; rather, after the vehicle crashed, he opened the door and "was simply seated in the vehicle when the K9 apprehended him." *Id.* As Plaintiff also notes, Defendant admitted that he only cited Plaintiff with a Section 148 violation for allegedly fleeing the vehicle after being told to stop. *Id.*; *see also* Mally Dep. at 68:5–7 ("Q. Why did you cite him with that violation? A. For fleeing from the vehicle after I told him to stop.").

Plaintiff's dispute with Defendant over the basis for the Section 148 citation partially misses the mark, as Defendant does not move for summary judgment on the basis that he had probable cause to arrest Plaintiff based on him attempting to flee. Defendant instead maintains that probable cause existed because, based on the totality of the circumstances, there was a fair probability that Plaintiff was involved in the earlier-reported home invasion armed robbery, or some other illegal conduct, given the identification of the armed robbery suspects as young black men in a blue car and because Plaintiff's uncle had just led Defendant on a high-speed pursuit.

*See* Mot. at 9–11.

The Court finds Defendant has not established by uncontroverted evidence that he had probable cause to arrest Plaintiff so as to warrant summary judgment on Plaintiff's unlawful seizure claim. For one, Defendant cites no case law to support the proposition that general descriptions of suspects involved in a crime as "Black males who appeared to be in their twenties . . . seen in a blue vehicle" would give rise to an objectively reasonable basis to *arrest* young black men in a blue vehicle. *See* Reply at 3. Even if this information might create reasonable suspicion for an investigatory stop—which the Court does not here consider—the information is not enough to support an objectively reasonable basis to arrest a suspect. Second, Defendant's reliance on the purported "unprovoked flight" in this situation proves too much. Not only does Defendant's sole case[2] on this point only address the reasonableness of an investigatory stop, and not an arrest, but it also is inapposite to the current facts, as Plaintiff was merely a passenger in a fleeing vehicle.[3] *Cf. Wardlow*, 528 U.S. at 123 ("This case, involving a brief encounter between a citizen and a police officer on a public street, is governed by the analysis we first applied in *Terry* [*v. Ohio*, 392 U.S. 1 (1968)]"). Construing the facts in the light most favorable to Plaintiff, he engaged in no "unprovoked flight" whatsoever.

All told, viewing "the totality of the circumstances" in the light most favorable to Plaintiff, Defendant has failed to establish that the uncontroverted facts show there was a "substantial chance of criminal activity" by Plaintiff to establish probable cause to support Plaintiff's arrest. *See Alaimalo*, 313 F.3d at 1193. Accordingly, Defendant is not entitled to summary judgment on this claim.

//

//

---

[2] Defendant mis-cites *United States v. Brigoni-Ponce*, 422 U.S. 873, 885 (1975) for the following statement: "Headlong flight . . . is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *See* Reply at 3. This quote is in fact from *Illinois v. Wardlow*. 528 U.S. 119, 124 (2000).

[3] The Ninth Circuit recently explained why flight alone may not give rise to reasonable suspicion to support even an investigatory stop. *See United States v. Brown*, No. 17-30191, 2019 WL 2364504 (9th Cir. June 5, 2019).

## B. Excessive Force

A claim that a law enforcement officer used excessive force during a seizure is reviewed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 388 (1989). And to evaluate the reasonableness of Defendant's action, the Court "must balance the severity of the intrusion on the individual's Fourth Amendment rights against the government's need to use force." *See Newmaker v. City of Fortuna*, 842 F.3d 1108, 1116 (9th Cir. 2016). In doing so, the Court considers the following factors set forth in *Graham*: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. Whether the suspect poses an immediate threat is the "most important factor." *See Jones v. Las Vegas Metro. Police Dep't*, 873 F.3d 1123, 1130 (9th Cir. 2017). "However, a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001). And "[a] desire to resolve quickly a potentially dangerous situation is not the type of governmental interest that, standing alone, justifies the use of force that may cause serious injury." *Id.* As to the use of police dogs in particular, their use "may be reasonable as a general policy to bring an arrestee under control, but in a situation in which an arrestee surrenders and is rendered helpless, any reasonable officer would know that a continued use of the [K9] or a refusal without cause to alleviate its harmful effects constitutes excessive force." *See LaLonde v. Cty. of Riverside*, 204 F.3d 947, 961 (9th Cir. 2000).

Plaintiff here alleges that he was a passenger in a crashed vehicle when Defendant's K9 entered the vehicle and bit him. Opp. at 12. Plaintiff then alleges that Defendant continued to permit his K9 to bite and hold Plaintiff, all while Plaintiff posed no immediate threat to Defendant or anyone else. *Id.* Plaintiff adds that Defendant admitted during his deposition that he never observed Plaintiff with a weapon and did not hear Plaintiff make any verbal threats. *Id.*; *see also* Mally Dep. at 40:13–19.

Viewing all facts in the light most favorable to Plaintiff, a reasonable jury could find that Defendant was not justified in using a K9 to subdue a complying suspect, and allowing the K9 to

continue to bite and hold Plaintiff when he showed no signs of resistance. In fact, Defendant's only stated justification for using a K9 to subdue Plaintiff was because Plaintiff purportedly was fleeing, and continued to permit his K9 to bite and hold Plaintiff because Plaintiff was "[n]ot complying with [his] orders, and at one point [he] could not see [Plaintiff's] hand." *See, e.g.*, *id.* at 47:17–22, 49:3–6. Those facts are disputed, and a reasonable jury could reject Defendant's characterization of the incident.

### C. Malicious Prosecution

As to Plaintiff's malicious prosecution claim, the parties agree that Plaintiff's claim requires demonstrating that Defendant prosecuted Plaintiff with malice, without probable cause, and that Defendant did so for the purpose of denying Plaintiff his equal protection or another constitutional right. *See* Mot. at 13; Opp. at 13. Defendant, however, seeks summary judgment based on the "*Smiddy* presumption." *See Smiddy v. Varney*, 665 F.2d 261, 266 (9th Cir. 1981) (*Smiddy I*), *overruled on other grounds by Beck v. City of Upland*, 527 F.3d 853, 865 (9th Cir. 2008). *Smiddy I* stands for the principle that there is "a rebuttable presumption that a prosecutor exercises independent judgment regarding the existence of probable cause in filing a complaint." *Smiddy v. Varney*, 803 F.2d 1469, 1471 (9th Cir. 1986) (*Smiddy II*). "The presumption can be overcome," however, "by evidence that the officer[] knowingly submitted false information," which caused the filing of the complaint. *Id.* Otherwise, the presumption "insulates the arresting officers from liability for harm suffered after the prosecutor initiated formal prosecution." *Id.* The Ninth Circuit has explained, though, that "*a plaintiff's account of* the incident in question, by itself, does not overcome the presumption of independent [prosecutorial] judgment." *Newman v. Cty. of Orange*, 457 F.3d 991, 994 (9th Cir. 2006).

The Court finds summary judgment on Plaintiff's malicious prosecution claim is not warranted based on the *Smiddy* presumption because Plaintiff has put forth sufficient evidence to create a material factual dispute as to whether Defendant knowingly submitted false information that led to a prosecutor initiating formal prosecution. Plaintiff here does not rest his malicious prosecution claim on his account of the incident alone. *Cf. Newman*, 457 F.3d at 994. Plaintiff instead submitted a video of the incident that constitutes evidence that Defendant "knowingly

8

submitted false information" in his police report. *See Smiddy II*, 803 F.3d at 1471. Defendant purportedly cited Plaintiff with a violation of Section 148 because Plaintiff emerged from the crashed vehicle, fled on foot, and continued to flee after he was commanded to stop. Mally Dep. 67:25–68:9. The video, however, shows Plaintiff being bitten by Defendant's dog just feet away from the crashed vehicle, and between the crashed car and Defendant's police vehicle.

Defendant counters that the video is "insufficient to show malicious prosecution," because it "is not competent evidence to show Plaintiff did not flee from the car because the recording captures only part of the incident, depicts Plaintiff only after he already was bitten by the K9 and fails to show Plaintiff's actions leading up to the bite." Reply at 11. Defendant asks too much at the summary judgment stage. Although the *Smiddy* presumption imposes a burden on Plaintiff to present some independent evidence that Mally knowingly submitted false information that gave rise to the contested prosecution, Plaintiff has met that burden. Based on the video evidence, it is amply possible that Defendant's characterization of the factual basis for citing Plaintiff with a violation of Section 148 was knowingly false, when submitted.

### D. Qualified Immunity

Defendant argues that summary judgment is further warranted on Plaintiff's excessive force and malicious prosecution claims, because Defendant is entitled to qualified immunity. Mot. at 20–21.[4] The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court considering a claim of qualified immunity makes a two-pronged inquiry: (1) whether the plaintiff has alleged the deprivation of a constitutional right, and (2)

---

[4] Defendant's motion for summary judgment did not argue that he was entitled to summary judgment due to qualified immunity as to Plaintiff's unlawful seizure claim. *See* Mot. at 20–21. In Defendant's reply brief, however, he states in passing that qualified immunity also applies to Plaintiff's unlawful seizure claim. *See* Reply at 13 (arguing that "Plaintiff fails to identify clearly established law prohibiting Mally from detaining or arresting Plaintiff"). The Court finds this argument waived due to Defendant's failure to raise it in his opening motion for summary judgment. *See Smith v. City of Santa Clara*, 876 F.3d 987, 995 (9th Cir. 2017) (argument raised for first time in reply brief is waived); *Graves v. Arpaio*, 623 F.3d 1043, 1048 (9th Cir. 2010) (same); *see also Maxwell v. Cty. of San Diego*, 708 F.3d 1075, 1083 (9th Cir. 2013) (finding Sheriff's officers "waived the argument raised in their reply brief that there was no seizure").

1   whether such right was clearly established at the time of the deprivation. *See Pearson v.
2   Callahan*, 555 U.S. 223, 232 (2009) (quoting *Saucier v. Katz*, 535 U.S. 194, 201 (2001)). The
3   court may exercise its discretion in deciding which prong to address first, in light of the particular
4   circumstances of each case. *Id.* at 236 (noting that while the *Saucier* sequence is often appropriate
5   and beneficial, it is no longer mandatory). "[U]nder either prong, courts may not resolve genuine
6   disputes of fact in favor of the party seeking summary judgment," and must, as in other cases,
7   view the evidence in the light most favorable to the nonmovant. *See Tolan v. Cotton*, 572 U.S.
8   650, 656 (2014).

"[A] right is clearly established only if its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 574 U.S. 13 (2014) (internal quotation marks and citation omitted). The inquiry into whether a constitutional right was clearly established must be undertaken in light of the "specific context" of the case, not as a broad general proposition. *Saucier*, 533 U.S. at 202. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that the challenged conduct was unlawful in the situation the officer confronted. *Id*. "Such specificity is especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks and brackets omitted).

A court determining whether a right was clearly established looks to "Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *See id.* Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002). It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [a court] can conclude that the law was clearly established on the basis

of unpublished decisions only." *Id.* Post-incident cases generally are not relevant unless they determine the law at the time of the incident. *See Osolinski*, 92 F.3d at 936. Finally, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 581 (2018).

Having found a genuine issue of fact as to whether Defendant's actions violated the Constitution as to Plaintiff's alleged excessive force and malicious prosecution claims, the Court addresses whether the contours of the asserted right were clearly established at the time of Defendant's conduct. *See Pearson*, 555 U.S. at 232. In analyzing this prong, the Court is mindful of the Supreme Court's caution against articulating general formulations rather than identifying specific precedent that addresses similar circumstances. *See City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) ("[W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment. . . . While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.") (quoting *Wesby*, 138 S. Ct. at 581).

Defendant argues that qualified immunity applies to both Plaintiff's excessive force and malicious prosecution claims. Mot. at 21. As to the former, Defendant argues that there is no authority involving "officers [who] are involved in a high speed pursuit of a vehicle and individuals believed to be suspects in a violent, armed home invasion robbery, possibly armed with a firearm, and possibly involved in a reported carjacking, the suspect vehicle stops only when it crashes, the driver runs from the car and the involved passenger appears to be exiting the car to flee, yet police were prohibited from using a police K9 to protect themselves from suspects who were not in custody and had not yet been searched." *Id.* at 20. As to Plaintiff's malicious prosecution claim, Defendant argues that Plaintiff "cannot identify any authority clearly prohibiting Mally from preparing a truthful, accurate statement of probable cause that differs from a suspect's version of the incident under circumstances similar to this case." *Id.* at 21.

In response, Plaintiff fails to proffer *any* authority whatsoever—and thus no authority under similar circumstances—as binding precedent from which the Court could conclude that

11

pertinent law related to his Section 1983 excessive force claim was clearly established, such that qualified immunity does not apply. Instead, Plaintiff merely states that "[a]t all times relevant to this action, it was clearly established that the use of force in releasing a police K9 was reasonable only if an officer had cause to believe that the suspect posed a significant threat of harm to the officer or others or to overcome active resistance or flight." Opp. at 15. Absent some binding precedent under similar circumstances, qualified immunity only applies in the rare "obvious case" where the unlawfulness of the officer's conduct is sufficiently clear. *See Wesby*, 138 S. Ct. at 590. This is not such a case with respect to Plaintiff's excessive force claim.

Although the Court finds that Plaintiff's excessive force claim is not one of the "obvious cases" precluding qualified immunity, Plaintiff's malicious prosecution claim presents a different situation. Unlike measuring the reasonableness of an officer's level of force—ordinarily a difficult issue given that officers must make snap-judgment decisions in high-stress situations—it is obvious to any reasonable officer that they cannot cite a suspect based on knowingly false information, from which a prosecutor would file charges. *See Blankenhorn v. City of Orange*, 485 F.3d 463, 480–83 (9th Cir. 2007) (reversing summary judgment finding on malicious prosecution claim and finding that qualified immunity did not apply). Viewing all of the facts in the light most favorable to Plaintiff, that is what Defendant did. And Defendant's argument that Plaintiff "cannot identify any authority clearly prohibiting Mally from preparing a truthful, accurate statement of probable cause that differs from a suspect's version of the incident under circumstances similar to this case" is beside the point, as that is not a characterization of the facts in the light most favorable to Plaintiff.

For these reasons, the Court finds that Defendant is entitled to qualified immunity as to Plaintiff's excessive force claim, but not as to Plaintiff's malicious prosecution claim.

### E. Bane Act

Defendant next argues that he is entitled to summary judgment on Plaintiff's Bane Act claim because he did not commit the underlying excessive force violation. The Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out by threats, intimidation, or coercion." *Reese v. Cty. of*

12

*Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (internal quotation marks omitted). California Civil Code Section 52.1 "provides [the] cause of action for violations of a plaintiff's state or federal civil rights committed by threats, intimidation, or coercion." *Id.* (internal quotation marks omitted). "Claims under section 52.1 may be brought against public officials who are alleged to interfere with protected rights, and qualified immunity is not available for those claims." *Id.* at 1040–41.

To establish a Bane Act claim, Plaintiff must ultimately prove "both (1) a violation of a 'state or federal constitutional or legal right'; and (2) that the violation was achieved through 'threats, intimidation, or coercion.'" *Inman v. Anderson*, 294 F. Supp. 3d 907, 928–29 (N.D. Cal. 2018) (quoting *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (Ct. App. 2015)). And the Ninth Circuit has recently clarified that "[n]othing in the text of the [Bane Act] requires that the offending 'threat, intimidation or coercion' be 'independent' from the constitutional violation alleged." *Reese*, 888 F.3d at 1043 (quoting *Cornell v. City & Cty. of S.F.*, 225 Cal. Rptr. 3d 356, 383 (Ct. App. 2017)). Although the Ninth Circuit held that "the Bane Act does not require the threat, intimidation or coercion element of the claim to be transactionally independent from the constitutional violation alleged," the Bane Act does require "a specific intent to violate the arrestee's right to freedom from unreasonable seizure." *Id.* (internal quotation marks omitted). Thus, evidence of an unreasonable use of force alone does not satisfy the Bane Act's intent requirement. Instead, a plaintiff must show the officer "intended not only the force, but its unreasonableness, its character as 'more than necessary under the circumstances.'" *Id.* at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)). All told, summary judgment as to a Section 1983 excessive force claim due to qualified immunity does not compel summary judgment as to a Bane Act claim, but requires a heightened showing of intent.

As discussed above, there is a material dispute of fact as to whether Defendant acted unreasonably in releasing his K9 and permitting the K9 to continue to bite and hold Plaintiff under the circumstances, such that Plaintiff's Fourth Amendment rights were violated. Further, at this stage, and viewing the evidence in the light most favorable to Plaintiff, the Court cannot conclude that that no reasonable jury could find that Defendant acted with at least a reckless disregard to the

13

unreasonableness of releasing a K9 on a suspect who was seated in a crashed vehicle and was not attempting to flee. And given that qualified immunity does not apply to a Bane Act claim, the Court finds that Defendant is not entitled to summary judgment on this claim.

### F. Remaining State Law Claims

Finally, Defendant moves for summary judgment as to Plaintiff's state law (1) negligence, (2) battery, and (3) intentional infliction of emotional distress claims. Mot. at 22–25. Defendant's sole argument in favor of summary judgment on these claims, however, is that his use of a K9 was reasonable. *See* Reply at 14 (moving for summary judgment as to Plaintiff's negligence claim because "[t]he undisputed evidence establishes that Mally's conduct was objectively reasonable"); *id.* at 15 (moving for summary judgment as to Plaintiff's battery claim because "Mally's use of the K9 on Plaintiff was objectively reasonable under the totality of the circumstances"); *id.* (moving for summary judgment as to Plaintiff's intentional infliction of emotional distress claim because "Mally's use of force was objectively reasonable under the circumstances"). But for reasons discussed above, material facts exist such that the reasonableness of Defendant's conduct is in dispute. Defendant's basis for summary judgment on the remaining state law claims is thus unwarranted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **GRANTED** as to the Section 1983 claim for excessive force. The motion for summary judgment is **DENIED** as to Plaintiff's Section 1983 claims for unlawful seizure and malicious prosecution, as well as Plaintiff's Bane Act, negligence, battery, and intentional infliction of emotional distress claims.

**IT IS SO ORDERED.**

Dated: 6/20/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge